## In re ROBERTS MINING & MILLING CO. (ADAMS, Intervener).

### No. 561.

District Court, D. Nevada.

Nov. 19, 1940.

James T. Boyd, of Reno, Nev., for James T. Boyd and M. J. Haugh.

Hawkins & Hawkins, of Reno, Nev., for debtor.

E. F. Treadwell, of San Francisco, Cal., for intervener Fred C. Adams.

Mento & Read, of Sacramento, Cal., for A. E. Vandercook et al.

Gray Mashburn, Atty. Gen., for the State of Nevada.

W. R. Reynolds, of Eureka, Nev., for Eureka County.

Thatcher & Woodburn, of Reno, Nev., for Greenan & Co.

NORCROSS, District Judge.

Debtor and respondent are lessor and lessee, respectively, of a number of mining claims. By the terms of the lease, as originally executed with the approval of the Court and later as so modified, respondent was authorized to mine ore from said claims and to mill, smelt or otherwise reduce the ore so extracted, upon a royalty basis.

It is the contention of debtor and intervener that respondent has not accounted to debtor in full for the royalties required to be paid under the terms of the lease in that respondent, in so accounting, made deductions from the ore returns for certain expenses not authorized by the terms of the lease, and that certain ore which, prior to the lease, had been mined by the debtor and was in ore dumps on certain of the leased claims, was not within the terms of the lease, but that respondent had shipped the same to a smelter, together with ore mined in accordance with the provisions of the lease.

The original lease was of date July 15, 1938. The modification thereof was approved May 2, 1939. As modified, the material provisions of the said lease read: "To pay to said Lessor as royalty—of and/or on all ore extracted from said premises, by delivery of such ore with all convenient speed in lots as mined to some mill, mint, smelter or regular ore buyer, as follows: * * * (Note: here follows statement of various royalty rates based on dry ore tonnage values.) * * * All royalties shall be paid to the Lessor for each calendar month * * * and shall be calculated on the basis of the returns from each shipment and the tonnage applying thereto. At the time of paying such royalties, the Lessee shall deliver to the main office of the Lessor a statement, in writing, of the tonnage milled during said month, the amount recovered and copies of the mint or smelter returns applying thereto."

The ore here involved was, in mining parlance, of a base character and required

smelting as a method of reduction treatment. It is clear from the terms of the lease that the lessee had a right to transport the mined ore to a smelter. Such transportation required the use of trucks for some miles from the mine to a railroad station where the ore was transferred to railroad cars for delivery to a custom smelter in the State of Utah. It is the trucking charges, paid directly by the lessee, and the freight charges paid by the smelter and by it deducted as one of its costs in making its settlement, as purchaser of the ore shipment, with the lessee, which debtor, as lessor, and intervener claim to be improper deductions from the smelter returns, in so far as the basis of royalty payments are concerned.

At the hearing of this matter, it was conceded upon the part of respondent, lessee, that the deductions made for trucking costs to the railroad for rail shipment to the smelter were not proper deductions and that an accounting therefor will be made. It is so adjudged. With respect to the railroad freight deductions it is, however, most seriously urged that they are proper deductions.

It will be noted that the smelter to which the ore was shipped was also a "regular ore buyer" as that expression is used in the modified provision of the original lease. It was the custom of the smelter, as purchaser of ore shipments, to pay all railroad freight charges. In fact, such freight charges varied in accordance with the value of the ore shipments—the higher the value of the ore the higher the rate of freight charge. The amount of such freight charge and time of payment, therefore, were dependent on the final reduction of the ore shipments by the smelter operations and governed thereby.

At the hearing testimony upon the part of respondent was admitted, subject to objection by debtor and respondent, by two mining engineers, to the effect that as used in mining leases of the character here involved, the expressions "returns," "smelter returns," "net smelter returns," have identical meaning. This testimony was not disputed by other witnesses. It is also a matter of common knowledge in mining regions that what is known as free milling ores and base ores may exist in close proximity, requiring different methods of treatment. As in the present case, it frequently occurs that a group of claims under a single ownership may carry ores of various characteristics requiring different modes of treatment. It also frequently occurs that a mining property producing base ores requiring smelter operations does not possess such quantity of ore as to justify the great expense of the construction of a smelter. It is such conditions which have occasioned the establishment of custom smelters in various mining centers so constructed and located as to provide a means of reduction of ores mined over a very large area. The reduction of ore produced from any particular mine, in most instances, requires railroad transportation. Out of this situation has grown the method of accounting to the ore shipper by the smelter. In effect, delivery to the railroad is delivery to the smelter, which includes the railroad freight charges, when ascertained, as a part of the smelting costs. Where, as in this case, shipments are made by a lessee mining the ore on a royalty basis, in the absence of some provision in the lease to the contrary, such lease is subject to the construction that all smelting costs, including freight charges, are subject to deduction in determining the net return values upon which royalties are to apply. The contention of debtor and intervener that such freight charges should be eliminated in determining royalty payments is without merit.

With respect to the ore contained in ore dumps previously mined by debtor, no reference is made in the lease thereto. The lease refers to the requirement of the lessee for the "delivery of such ore with all convenient speed in lots as mined to some mill, smelter, or regular ore buyer." The ore in the dumps had already been mined by debtor at its expense and, hence, were not within the terms of the lease. At the hearing, the precise tonnage of the ore dumps was not stated, nor was any express method of determining an amount for accounting therefor presented. It will, therefore, be left to the parties in interest to endeavor to reach an agreement upon any adjustment which should be made in respect to such ore and to report the same for approval. If such agreement can not be mutually effected further application for hearing may be made to the Court.